UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI  DIVISION

DOUGLAS E. YOUNG, Individually and on Behalf of All Others Similarly Situated,

v.

HARVEST MIDSTREAM COMPANY

Case No.2:21-cv-00226

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Plaintiff Douglas E. Young (Young) brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") against Defendant Harvest Midstream Company (Harvest).

2.     Young and the other workers like him ("Putative Class Members") regularly worked for Harvest in excess of 40 hours each week.

3.     These workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4.     Instead, these workers were paid a day rate. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Harvest's

corporate headquarters are located in this district and division in Houston, Texas.[1]

## THE PARTIES

7.     Young performed work for Harvest as a coating inspector and utility inspector from approximately June 2019 through November 2019.

8.     Throughout his time with Harvest, he was paid a day-rate with no overtime compensation.

9.     His consent to be a party plaintiff is attached as Exhibit A.

10.     Harvest employed Young and those similarly situated to him.

11.     Harvest Midstream Company may be served with process by serving its registered agent CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

## COVERAGE UNDER THE FLSA

12.     For at least the past three years, Harvest has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

13.     For at least the past three years, Harvest has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

14.     For at least the past three years, Harvest has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that

---

[1] https://www.harvestmidstream.com/contact-us/ (last visited Sept. 24, 2021).

said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

15.     For at least the past three years, Young and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

16.     Young is a private oil and gas company headquartered in Houston that is the "go-to provider for midstream services in the United States."[2]

17.     "Harvest has an interest in over 6,000 miles of pipeline across seven states — Alaska, Colorado, Louisiana, New Mexico, Ohio, Pennsylvania, and Texas."[3]

18.     Harvest's operations "include the transport and processing of natural gas, crude oil and natural gas liquids".[4]

19.     To continue operating, Harvest relies on day-rate workers.

20.     While exact job titles and job duties may differ, these day-rate workers are subjected to the same or similar illegal pay practice for similar work.

21.     Specifically, Harvest paid these workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

22.     For example, Young worked for Harvest from September 2019 to December 2019 as a coating inspector and utility inspector for the construction of an oil and gas pipeline near Corpus Christi, Texas.

---

[2] https://www.harvestmidstream.com/about-us/history/ (last visited September 24, 2021).
[3] https://www.harvestmidstream.com/operations/ (last visited September 24, 2021).
[4] *Id.*

23.     As a coating inspector and utility inspector, Young's primary job duties included inspecting the coating on oil and gas pipelines, storage facilities, and other projects, mainline coding, tie-ins, and dirt work.

24.     Young did not have any supervisory duties.

25.     Young did not hire for fire employees.

26.     Young did not exercise discretion and judgment as to matters of significant.

27.     To the contrary, Young worked with his hands.

28.     Young performed manual labor.

29.     Young used hand tool on pipelines.

30.     Young worked in the elements and would become dirty as a result of his work.

31.     Young worked in dangerous conditions.

32.     Pipelines have the potential to explode.

33.     Pipelines can be dangerous.

34.     Young did not manage a business unit.

35.     Young could not make decisions as to matters of significance that would impact overall business operations.

36.     Young's decisions were limited to routine and manual tasks surrounding pipeline inspections for Harvest.

37.     Young was heavily supervised by Harvest.

38.     Young was required to follow Harvest's policies and procedures.

39.     Young reported to Harvest on a regular basis.

40.     Harvest determined the pay practice through which Young is compensated.

41.     Harvest did not guarantee Young a salary.

42.     Harvest did not provide Young overtime pay.

43.     Harvest employed Young for purposes of the FLSA.

44.     Harvest set Young's schedule and controlled the conditions of Young's work and employment with Harvest.

45.     Harvest required Young to work over 40 hours in a week.

46.     Harvest typically scheduled Young to work 10-hour minimum shifts, for as many as 6 to 7 days a week.

47.     Harvest kept accurate records of the hours, or at least days, of Young's work.

48.     Harvest required Young to report his time to it.

49.     Harvest required Young to report his expenses to it.

50.     Harvest approved Young's time worked.

51.     Young's work was production based.

52.     Young's work was integral to the operation of Harvest's pipelines and crude transportation.

53.     Young was prohibited from deviating from Harvest's quality standards.

54.     Young was a blue-collar worker.

55.     Young was not exempt under any white-collar exemption.

56.     Young was not guaranteed a salary.

57.     Harvest cannot demonstrate that Young was paid on a salary basis in accordance with the FLSA.

58.     Harvest cannot demonstrate that Young was not its employee for purposes of the FLSA.

## FLSA VIOLATIONS

59.     Young incorporates the preceding paragraphs by reference.

60.     As set forth herein, Harvest violated the FLSA by failing to pay Young and the Putative Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

61.     At all relevant times, Harvest has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

62.     Harvest employed Young and each member of the Putative Class.

63.     Young alleges Harvest's day-rate policy is a per se violation of the FLSA. *Hewitt v. Helix Energy Sols. Grp., Inc.*, No. 19-20023, 2021 WL 4099598 (5th Cir. Sept. 9, 2021).

64.     Harvest's pay policy denied Young and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

65.     Harvest owes Young and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

66.     Harvest knew, or should have known, these workers were being paid a day rate. It knew or showed reckless disregard for whether its failure to pay overtime violated the FLSA. Its failure to pay overtime to Young and the Putative Class is willful.

67.     Due to Harvest's FLSA violations, Young and the Putative Class Members are entitled to recover from Harvest for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

68.     The improper pay practices at issue were part of a continuing course of conduct, entitling Young and Putative Class Members to recover for all such violations, regardless of the date they occurred.

## COLLECTIVE ACTION ALLEGATIONS

69.     Young incorporates all previous paragraphs and alleges that the illegal pay practices Harvest imposed on Young were likewise imposed on the Putative Class Members.

70.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

71.     Many of these employees have worked with Young and the Putative Class Members have reported that they received a day rate with no guaranteed salary and no overtime. Even if their precise job titles may differ, the Putative Class Members are all victims of Harvest's unlawful compensation practices and are similarly situated to Young in terms of pay provisions, and employment practices.

72.     Harvest paid Young and the other workers staffed through vendors pursuant to a uniform day rate compensation plan, regardless of their job title, job duties, or locations worked.

73.     The Putative Class Members are similarly situated based on Harvest's common pay policy.

74.     The Putative Class Members are similarly situated based on Harvest's common practices applied to all Putative Class Members.

75.     The Putative Class Members are similarly situated because Harvest's plan regarding the use and pay of Putative Class Members is similar.

76.     The Putative Class Members' primary job duties included the inspection and operation of oil and gas pipelines, storage facilities, and other construction and production projects as needed.

77.     Harvest hired the Putative Class Members through staffing companies and paid these workers a day rate regardless of their job titles, duties, project, or location. It retained the right to fire these workers at its discretion.

78.     Putative Class Members did not have any supervisory duties.

79.     Putative Class Members did not hire for fire employees.

80.     Putative Class Members did not exercise discretion and judgment as to matters of significant.

81.     To the contrary, Putative Class Members worked with their hands.

82.     Putative Class Members performed manual labor.

83.     Putative Class Members used hand tool on pipelines.

84.     Putative Class Members worked in the elements and would become dirty as a result of their work.

85.     Putative Class Members worked in dangerous conditions.

86.     Putative Class Members did not work in an office.

87.     Putative Class Members did not manage a business unit.

88.     Putative Class Members could not make decisions as to matters of significance that would impact overall business operations.

89.     Putative Class Members' decisions were limited to routine and manual tasks surrounding pipeline inspections for Harvest.

90.     Putative Class Members were heavily supervised by Harvest.

91.     Putative Class Members were required to follow Harvest policies and procedures.

92.     Putative Class Members reported to Harvest on a regular basis.

93.     Harvest determined the pay practice through which all Putative Class Members are compensated.

94.     Harvest did not guarantee the Putative Class Members a salary.

95.     Harvest did not provide the Putative Class Members overtime pay.

96.     Harvest employed the Putative Class Members for purposes of the FLSA.

97.     Harvest set the Putative Class Members' schedule and controlled the conditions of their work for Harvest.

98.    Harvest required the Putative Class Members to work over 40 hours in a week.

99.    Harvest typically scheduled Putative Class Members to work 10-hour minimum shifts, for as many as 7 days a week.

100.    Harvest kept accurate records of the hours, or at least days, of the Putative Class Members' work.

101.    Harvest required the Putative Class Members to report their time to it.

102.    Harvest required the Putative Class Members to report their expenses to it.

103.    Harvest approved the Putative Class Members' time worked.

104.    Harvest approved the Putative Class Members' expenses.

105.    Separate from the day rate, the Putative Class Members were paid a per diem.

106.    The per diem was not considered wages.

107.    The Putative Class Members were paid other reimbursements.

108.    The reimbursements were not considered wages.

109.    The Putative Class Members' work was production based.

110.    The Putative Class Members' work was integral to the operation of Harvest's pipelines and crude transportation.

111.    The Putative Class Members were prohibited from deviating from Harvest's quality standards.

112.    The Putative Class Members were blue collar workers.

113.    The Putative Class Members were not exempt under any white-collar exemption.

114.    The Putative Class Members were not guaranteed a salary.

115.    Harvest cannot demonstrate that the Putative Class Members were paid on a salary basis in accordance with the FLSA.

116.    Harvest cannot demonstrate that the Putative Class Members were not its employees for purposes of the FLSA.

### JURY DEMAND

117.    Young demands a trial by jury.

### RELIEF SOUGHT

118.    WHEREFORE, Young prays for judgment against Defendant as follows:

a)  An Order designating the case as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b)  For an Order appointing Young and his counsel to represent the interests of the Putative Class Members;

c)  For an Order finding Harvest is liable to Young and the Putative Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d)  For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

e)  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
**Michael A. Josephson**
State Bar No. 24014780
Federal ID 27157
**Andrew W. Dunlap**
State Bar No. 24078444
Federal ID 1093163
**Rochelle D. Prins\***
Arizona ID 031393
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com

adunlap@mybackwages.com
*Application Pro Hac Vice Forthcoming*

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
Federal ID 21615
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**